### Chizum *v.* State of Indiana.

[No. 26,069. Filed April 21, 1932.]

*A. T. Livengood,* for appellant.

*James M. Ogden,* Attorney-General, and *Merl M. Wall,* Deputy Attorney-General, for the State.

MYERS, J.—Appellant, with Tony Mahoney and two other persons, was charged by affidavit with the alleged offense of automobile banditry. Acts 1929 p. 136, §3, §2548 Burns Supp. 1929. Appellant had a separate trial and was convicted. Judgment and sentence of imprisonment followed. On appeal to this court, he assigns as error the overruling of his motion to quash the affidavit; the overruling of his motion in arrest of judgment; and the overruling of his motion for a new trial.

That part of the affidavit material to the questions presented charged that appellant and others, naming them, "did then and there unlawfully and feloniously rob, take, steal, carry, and haul away of the goods and chattels of Jack Winterstein, two slot machines and the money therein contained, all of the value of One Hundred dollars or more,"· by violence and putting in fear one Adrian Lutz who was then and there in charge of the slot machines and money, for and on behalf of Jack Winterstein. Appellant and the others named, at the time and place, had on and near the premises of the robbery when the robbery was committed by them "a self-moving vehicle, to wit: an automobile, by the use of which they intended to escape and did escape, contrary," etc.

The statute defining automobile banditry provides that: "If any person or persons shall commit ·or attempt to commit a felony, having at the time on or near the premises where such felony is attempted or committed, an automobile . . . by the use of which he or they escape, attempt to escape or intend to escape . . . shall be guilty of automobile banditry." §2548 Burns Supp. 1929.

In the instant case, robbery is designated as the felony committed and the facts constituting that offense must be stated in the affidavit. Our statute, at present material, defines robbery as follows: "Whoever forcibly and feloniously takes from the person of another any article of value, by violence or by putting in fear, is guilty of robbery." Acts 1929 p. 136, §1; §2425 Burns Supp. 1929. The motion to quash and in arrest of judgment challenged the affidavit for failure to allege that the articles mentioned in the affidavit were taken "from the person" of Lutz.

Robbery was a crime at common law. It was then defined as "the felonious and forcible taking from the person of another, goods or money to any value, by violence or putting him in fear." 3 Bouvier's (Rawle's 3d Rev.) p. 2971. Under this definition, it was held that if property was taken feloniously with force or violence or by putting in fear, in the presence of the owner, it was, in legal contemplation, a taking from his person. *Rex* v. *Francis* (1782), 2 Strange 1015; 1 Hale P. C. 532.

While we are not unmindful of the rule that criminal statutes must be strictly construed in favor of the accused, yet, if by applying the canons of interpretation to the wording of the statute, the legislative intention is in reality expressed, then the mischief falling within its language should be included. Since our statute uses the words "from the person of another," it would not be unreasonable to assume that the Legislature intended that they should be given the same meaning attributed to them at common law, and thus construed, it is not essential to a conviction for the crime of robbery, as said in *Hill* v. *State* (1894), 42 Nebr. 503, 527, 60 N. W. 916, "that the property be taken from the body of the person wronged. It is sufficient if taken from his personal presence or personal protection." The affidavit at

bar alleges that Lutz "was then and there in charge of the slot machines and money," the words "in charge of" being used in the sense of "in receipt of" or "in the possession of." While the affidavit does not charge the taking of the slot machines and money from the person of Lutz, yet the language used is equivalent to saying that they were taken from his presence or from his possession which, according to the principles of law above stated, is sufficient to charge robbery and to repel a motion to quash and in arrest of judgment. *People* v. *Covelesky* (1921), 217 Mich. 90, 185 N. W. 770; *People* v. *Braverman* (1930), 340 Ill. 525, 530, 173 N. E. 55; *People* v. *O'Hara* (1928), 332 Ill. 436, 163 N. E. 804; *State* v. *Calhoun* (1887), 72 Iowa 432, 34 N. W. 194, 2 Am. St. 252; *Sims* v. *State* (1930), 23 Ala. App. 387, 126 So. 498; *People* v. *Stevens* (1903), 141 Cal. 488, 75 Pac. 62; *Jackson* v. *State* (1902), 114 Ga. 826, 40 S. E. 1001, 88 Am. St. 60; *Crawford* v. *State* (1892), 90 Ga. 701, 17 S. E. 628, 35 Am. St. 242; *Porello* v. *State,* (1929), 121 Ohio St. 280, 288, 168 N. E. 135; *Commonwealth* v. *Homer* (1920), 235 Mass. 526, 127 N. E. 517; *Mahoney* v. *State* (1932), *ante* 421, 180 N. E. 580; 8 Ann. Cas. note p. 127; 23 R. C. L. 1142.

Appellant has suggested several causes in support of his motion for a new trial: (1) Overruling his motion for a change of venue from the county. In all criminal cases not punishable by death, the trial court may, in its discretion, grant a change of venue from the county. §2239 Burns 1926. The granting or the refusal to grant such change will not be disturbed on appeal unless there is a clear abuse of such discretion. *Pindell* v. *State* (1925), 196 Ind. 175, 147 N. E. 711. No such showing is made in this case. (2) Finding contrary to law for want of a plea to the affidavit. The record discloses that appellant waived an arraignment, but it is silent as to the plea. Since §197 of

the act of 1905, Acts 1905 p. 584, was amended (Acts 1927 p. 411, §9, §2232 Burns Supp. 1929), failure to plead to an indictment or affidavit in a criminal prosecution will not authorize the granting of a new trial unless the record discloses an objection by the defendant to entering upon the trial for want of an arraignment or plea. Appellant does not claim to have made any such objection. *Tokacs* v. *State* (1930), 202 Ind. 259, 173 N. E. 453.

(3) and (4). Finding not sustained by sufficient evidence and finding contrary to law. In support of these causes, appellant asserts that there was no evidence to show that the slot machines were the property "of the person named in the affidavit as the owner," or that they were taken by violence, or that they were taken away in an automobile, or that this defendant participated in any of the unlawful acts of his codefendants. There is practically no dispute in the evidence in this case, the substance of which is that the crime here charged took place on Sunday evening, November 30, 1930, between 7 and 8 o'clock. About 6 o'clock that evening, Tony Mahoney and appellant were together in the town of Attica in a Ford coupe being driven by appellant. Tony had a gun which he used to compel an acquaintance to ride with them for a short distance. They next appeared at the home of Rosa Booe at Veedersburg with Jack Mahoney and Lowell Brier. Tony Mahoney, in the presence of appellant, Jack and Lowell, lined up all the persons at the Booe home with their faces to the wall and searched them. Appellant took no part in the hold-up but, on its completion, said: "Come on, we had better go." They all left together in a Ford coupe which appellant drove. The Aylesworth filling station in question was located about seven miles northeast of Veedersburg on State Road No. 41. Between 7:30 and 8 o'clock that evening, they appeared

at the station. All went in except appellant, who remained in the car, and there is testimony tending to prove that he kept the motor running. At that time, several persons were playing the slot machines. In a few minutes, after appellant's associates entered the station, a couple of shots were fired and all of the persons therein, including Adrian Lutz, were lined up with their faces to the wall. While they were in that position, and after the slot machines were removed by Lowell Brier and Jack Mahoney, Tony ordered Lutz to hold up his hands that he might shoot the fire out of his cigarette. He fired a shot which took effect in Lutz's shoulder. Lutz resided at the station and was actively engaged in operating the business as an employee of Jack Winterstein. The slot machines were fastened together and were in the front room of the station. Lutz sold sandwiches, gasoline, oil, cigarettes, chewing gum, and made change for money used in playing the slot machines. He received the money for such sales and accounted to Winterstein. Appellant and his associates, the car in which he was sitting, and the slot machines all disappeared from the station at the same time. The next day the machines were found along the side of the highway badly damaged. Money was found along the road and at the place where the machines were destroyed. The evidence, of which the foregoing indicates its general trend, we deem entirely sufficient to show that appellant had a part in the appropriation as well as the transportation of the machines and the money therein, and that they were then in the possession or custody of Lutz and taken from him by violence. *State* v. *Whitley* (1931), 327 Mo. 226, 229, 36 S. W. (2d) 937.

Finally, appellant insists that the court erred in asking Jack Winterstein, a witness, questions as to the amount of money that was in the machines at the time they were taken from the station. This

case was tried before the court and the questions propounded to the witness by the court were not objectionable.

Judgment affirmed.