**Ronald HUGHES, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

**No. 1–678A177.**

Court of Appeals of Indiana, First District.

Feb. 5, 1979.

Rehearing Denied March 8, 1979.

---

1. Refusal to grant a motion in limine can never be reversible error on appeal. *See Lagenour v. State* (1978), Ind., 376 N.E.2d 475.

Robert F. Hellman, Terre Haute, for appellant.

Theodore L. Sendak, Atty. Gen., Carol A. Leatherman, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Defendant-appellant Ronald Hughes (Hughes) appeals from a conviction for rape and first degree burglary. The dispositive issue on appeal is whether the trial court erred in permitting the introduction of inculpatory extra-judicial statements made by Hughes to police officers and to his girlfriend.

The record reveals that an alleged rape occurred on July 12, 1977. In the afternoon of July 13, 1977, Hughes was arrested by Terre Haute detectives Basham (who was investigating the rape) and Utz. Both detectives candidly admitted that they did not have probable cause to arrest Hughes for the alleged rape; rather, Utz arrested Hughes on the authority of a bench warrant. The bench warrant had been issued as a result of proceedings in the Terre Haute city court wherein Hughes had pled guilty on December 12, 1975, to the offense of driving without an operator's license. The guilty plea was accepted by Judge Crawford and the matter was held under advisement until May 26, 1976. When Hughes failed to appear on May 26, a bench warrant was issued and, after *14 months,* it was executed by detective Utz on July 13, 1977.

Hughes was not taken to city court on July 13 because the court had closed at noon. Hughes was taken to jail whereupon he asked for an attorney. Unable to reach counsel by phone, Hughes consented to Basham's request for a line-up, content to reach an attorney thereafter. Public Defender Bolin was contacted after the line-up, and he advised Hughes to remain silent. Bolin communicated his advice to Basham.

In the morning of July 14, Hughes was fingerprinted and photographed. Without the benefit of counsel, Hughes was then transported to city court where sentencing on the driving without a license charge was postponed, and Hughes was placed under a bond of $10,000. Judge Crawford stated in his deposition (stipulated into evidence) that his decision was based on the request of the prosecutor because the detectives wanted to further question Hughes concerning the rape of July 12. Indeed, the State asserts in its brief that "[t]he defendant was taken to City Court where the Judge set a $10,000 bond until the police could finish questioning him." No evidence was introduced with respect to the proper amount of bond to be required. Hughes was then incarcerated in the "bullpen" in the vicinity of the city court in a condition described as "on the verge of hysteria."

Later in the day, Hughes asked to talk with Basham. Basham was contacted by phone but said he was too busy to see Hughes. Hughes's request was repeated to Deputy Sheriff Floyd on July 15. Floyd phoned Basham and said he thought Hughes was about to capitulate and give a confession. Basham went to the jail and, with Floyd, escorted Hughes to a separate room in the Vigo County jail where Basham told Hughes he still had the right to counsel. Hughes signed a waiver of rights form,[1] and Floyd testified that Basham then asked Hughes if he wanted to confess, or was he (Basham) going to have to go out and "prove it." Floyd stated that Hughes said he didn't want to incriminate himself, and Floyd then left the room. Within two minutes, Basham retrieved Floyd to witness a confession. Basham testified that Hughes was nervous and crying, and even asked for medical help. Basham said:

[I]t was my impression that Ronnie Hughes was scared. And he wanted out of jail. He didn't like being in jail. And he wanted to do anything he could to get out of jail—like say he needed a doctor[,] for a doctor to get him out and take him somewhere—anything.

Hughes confessed to Basham, and while still incarcerated, later confessed over the

---

1. Contrary to the suggestion of the State, the giving of *Miranda* warnings and the execution of a waiver of rights form is not conclusive on the issue of voluntariness. *See* IC 35–5–5–2; *Blatz v. State,* (1977) Ind.App., 369 N.E.2d 1086.

phone to his girlfriend. He was then charged with rape and first degree burglary.

Hughes assigns as error the overruling of his motion to suppress his extra-judicial statements and his timely objection relating thereto at trial.

■ Hughes correctly asserts that the arrest was illegal. With respect to the bench warrant, our Supreme Court has held that a bench warrant becomes void upon expiration of the term of court in which it is issued. *Dearing v. State of Indiana,* (1951) 229 Ind. 131, 95 N.E.2d 832. Since terms of court are a calendar year (*Ind. Code* 33-1-6-1), the bench warrant was void and conferred no authority for the arrest. The State's candid admissions of no probable cause on other grounds eliminates the only possible cure.

■ Hughes also correctly asserts that his protracted detention on the suspicion of his involvement with the July 12 rape runs afoul of the requirement that a defendant be taken promptly before a neutral judicial officer subsequent to an arrest. IC 35-5-5-3. *See Pawloski v. State,* (1978) Ind., 380 N.E.2d 1230. But the State cautions that an illegal arrest does not automatically render inculpatory statements inadmissible. *See J.E.G. v. C.J.E.,* (1977) Ind.App., 360 N.E.2d 1030; *Sanders v. State,* (1972) 259 Ind. 43, 284 N.E.2d 751. Neither will such statements be inadmissible *per se* for an unlawful delay. *J.E.G., supra; Williams v. State,* (1976) 264 Ind. 664, 348 N.E.2d 623. Rather, illegality of antecedent conduct is relevant to the determination of whether the confession was voluntarily given and admissible. *See Pawloski, supra; Blatz v. State,* (1977) Ind.App., 369 N.E.2d 1086. In this respect, our standard of review is a familiar one:

At the pretrial suppression hearing the State had a heavy burden to prove beyond a reasonable doubt that the defendant knowingly and intelligently waived his privilege against self-incrimination

and his right to retained or appointed counsel. *Burton v. State,* (1973) 260 Ind. 94, 292 N.E.2d 790; *Nacoff v. State,* (1971) 256 Ind. 97, 267 N.E.2d 165. The legal standard to be applied is whether, looking at all the circumstances, the confession was free and voluntary, and not induced by any violence, threats, promises, or other improper influences. *Burton v. State, supra; Nacoff v. State, supra.*

*Baltz, supra,* 369 N.E.2d at 1088.

■ In the case at bar, we believe the conclusion is inescapable that the State failed to sustain its burden on the motion to suppress, and that there is a lack of substantial evidence of probative value to support a finding that Hughes's statements are voluntarily made. Here, the illegal arrest coalesced with an unlawful detention, and the $10,000 bond was used as a subterfuge to "buy time" for further investigation. Moreover, the interrogating officer (Basham) was well aware of the deleterious affects that incarceration had upon Hughes, yet proceeded to accept a "voluntary confession." Under such circumstances, we hold that the inculpatory statements, written and oral, were involuntary and require reversal.[2]

Furthermore, we feel it necessary to clarify an apparent misapprehension in the State's brief. The State contends that if a statement is found to be "voluntary," the illegality of the arrest and detention evaporates. This very contention met with disfavor and was the basis of the United States Supreme Court decision in *Brown v. Illinois,* (1975) 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (which our Supreme Court relied upon in *Williams*). The *Brown* Court held that the exclusion of statements which are the product of an unreasonable arrest is to give effect to the Fourth Amendment, while the giving of *Miranda* warnings and a finding of voluntariness based thereon primarily effectuates Fifth Amendment guarantees. We take occasion to quote the Court at length:

2. The testimony of Hughes's girlfriend with respect to his admission of guilt should have also

been suppressed since it was causally related to his prior admissions of guilt to the detectives.

Although, almost 90 years ago, the Court observed that the Fifth Amendment is in 'intimate relation' with the Fourth, *Boyd v. United States,* 116 U.S. 616, 633, 6 S.Ct. 524, 533, 29 L.Ed. 746 (1886), the *Miranda* warnings thus far have not been regarded as a means either of remedying or deterring violations of Fourth Amendment rights. Frequently, as here, rights under the two Amendments may appear to coalesce since 'the "unreasonable searches and seizures" condemned in the Fourth Amendment are almost always made for the purpose of compelling a man to give evidence against himself, which in criminal cases is condemned in the Fifth Amendment.' *Ibid.*; see *Mapp v. Ohio,* 367 U.S. 643, at 646 n. 5, 81 S.Ct. 1684, 6 L.Ed.2d 1081. The exclusionary rule, however, when utilized to effectuate the Fourth Amendment, serves interests and policies that are distinct from those it serves under the Fifth. It is directed at all unlawful searches and seizures, and not merely those that happen to produce incriminating material or testimony as fruits. In short, exclusion of a confession made without *Miranda* warnings might be regarded as necessary to effectuate the Fifth Amendment, but it would not be sufficient fully to protect the Fourth. *Miranda* warnings, and the exclusion of a confession made without them, do not alone sufficiently deter a Fourth Amendment violation.

Thus, even if the statements in this case were found to be voluntary under the Fifth Amendment, the Fourth Amendment issue remains. In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, *Wong Sun* [371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)] requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be 'sufficiently an act of free will to purge the primary taint.' 371 U.S., at 486. *Wong Sun* thus mandates consideration of a statement's admissibility in light of the distinct policies and interests of the Fourth Amendment.

\*　　\*　　\*　　\*　　\*　　\*

Arrests made without warrant or without probable cause, for questioning or 'investigation,' would be encouraged by the knowledge that evidence derived therefrom could well be made admissible at trial by the simple expedient of giving *Miranda* warnings. Any incentive to avoid Fourth Amendment violations would be eviscerated by making the warnings, in effect, a 'cure-all,' and the constitutional guarantee against unlawful searches and seizures could be said to be reduced to 'a form of words.' See *Mapp v. Ohio,* 367 U.S., at 648, 81 S.Ct. 1684.

422 U.S. at 601–603, 95 S.Ct. at 2260–2261 (footnotes omitted). The Court went on to declare that it is particularly appropriate to inquire into the "purpose and flagrancy of the official misconduct . . ." 422 U.S. at 604, 95 S.Ct. at 2262, and that the obvious purpose of the exclusionary rule in such a case is to deter future invasions of constitutional rights.

In the instant case, we think it clear that the law enforcement machinery operated in flagrant disregard of the constitutional rights of Hughes with the purpose of accumulating information to be used against him. An illegal arrest and an unlawful detention should not be confined to the consideration of the voluntary character of a confession. Such conduct must also be evaluated in the context of Fourth Amendment proscriptions and the purpose to be served by the exclusionary rule. We additionally hold, therefore, that the inculpatory statements should have been suppressed as being the product of an unconstitutional invasion of the Fourth Amendment rights of Hughes, and that the conduct involved herein is particularly suited to application of the exclusionary rule.

Reversed and remanded for proceedings consistent with the views expressed herein.

LYBROOK, P. J., and LOWDERMILK, J., concur.