**Eddie Joe BROWN, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 784S271.

Supreme Court of Indiana.

Feb. 5, 1987.

Diane McNeal, Lake County Appellate Public, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Appellant Eddie Joe Brown was accused of brutally beating Betty Strickland and her two young sons, applying lighter fluid to their bodies and their home, and then setting them afire. Brown was convicted of three counts of murder, Ind.Code § 35–42–1-1 (Burns 1985 Repl.), and one count of arson, a class B felony, Ind.Code § 35–43–1-1 (Burns 1985 Repl.). Noting the uncommonly brutal nature of the murders, the trial court sentenced Brown to a total of 200 years in prison: enhanced consecutive terms of sixty years for each murder and twenty years for arson.

In this direct appeal, Brown raises three issues:

1) Whether his confession to police was improperly admitted at trial because it allegedly resulted from an illegal arrest;

2) Whether four photographs of the bodies admitted at trial were cumulative, excessively prejudicial and lacking in probative value, and

3) Sufficiency of the evidence.

## I. Confession

Brown was arrested at his father's home on Friday, July 22, 1983. Brown made a brief statement to police at the scene. On Saturday, July 23, Brown conferred with his father and declined to make a statement. On Sunday, July 24, he asked to speak to the police and gave a statement in which he confessed. Brown moved to suppress both statements, alleging that they were the product of an illegal arrest. The trial court determined that police did not have probable cause to arrest Brown on July 22 and therefore the first statement was inadmissible. The court admitted the second statement after concluding that intervening factors had purged the taint of the illegal arrest by the time that statement was given. Brown claims error from that ruling.

A confession obtained through custodial interrogation after an illegal arrest is generally inadmissible. However, such a confession may be admitted at trial if intervening events break the causal connection between the illegal arrest and the confession so that the the confession is sufficiently an act of free will to purge the primary taint. *Triplett v. State* (1982), Ind., 437 N.E.2d 468. Assessing the admissibility of such a confession necessitates consideration of both the Fifth Amendment right against self-incrimination and the Fourth Amendment right against unreasonable seizure of one's person.

The threshold requirement is that the confession be "voluntary" under the Fifth Amendment. *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). Appellant does not challenge the voluntariness of the confession on Fifth Amendment grounds, and a finding of vol-

untariness was implicit in the trial court's ruling. Once a statement is considered voluntary under the Fifth Amendment, its admissibility must be considered in light of the distinct policies and interests of the Fourth Amendment. *Id.*

Under Fourth Amendment principles, the determination of whether a confession offered after an illegal arrest is the product of a free will must be answered on the facts of each case. The United States Supreme Court has noted three important factors to consider: (1) the temporal proximity of the arrest and the confession, (2) the presence of intervening circumstances and, particularly, (3) the purpose and flagrancy of the official misconduct. *Id.* The State, of course, had the burden of showing that the confession was admissible. *Reid v. State* (1983), Ind.App., 444 N.E.2d 1247.

Brown was arrested at 7 a.m. on Friday. Police had been searching for Mrs. Strickland's missing vehicle in an area known as a popular location for dumping automobiles. The officers failed to find the car but realized that they were close to Brown's home. Police knew that Brown had lived with Mrs. Stickland and that he had threatened her life. They also knew that a black man had been seen around the Strickland home early on the morning of the crime and that Brown is black. Police asked a man in the neighborhood whether he knew where Brown lived. The man answered that he was Brown's father and that Brown lived with him.

As this conversation occurred, Brown arrived by car. The officers asked Brown what happened to his girlfriend. He said he had not seen Mrs. Strickland in months and had returned his keys to her home and car. Knowing that Brown's statement conflicted with reports from several independent witnesses, the police arrested him for the murders and arson. The arresting officer later testified that he believed that he had probable cause to arrest Brown, in light of Brown's apparent falsehoods and the other evidence collected at that time.

Brown refused to speak to police when they initially attempted to question him.

He was allowed to speak with his father privately for about fifteen minutes on Saturday. An officer asked Brown's father what Brown said; he responded that his son denied participating in the murders. The next day, Brown requested to speak to a particular police officer who had been investigating the crimes. That officer was not available, so another officer approached Brown. Brown refused to speak to him but shortly thereafter told that officer that he had changed his mind. The officer advised Brown of his *Miranda* rights before Brown read and signed a waiver of rights form. Brown confessed.

By this time, police had retrieved Brown's bloodstained clothing from his home and his fingerprints from Mrs. Strickland's abandoned vehicle and her home. Police also had obtained a statement from Brown's other girlfriend outlining suspicious activity by Brown on the morning of the crimes. The judge conducting the probable cause hearing on Monday determined that the evidence as a whole was sufficient to support a finding of probable cause.

During Brown's subsequent trial, the court found that two intervening factors purged the taint of the illegal arrest from the confession: Brown's private discussion with his father and Brown's request to speak to the officer. We agree. Brown's opportunity to receive advice from his father in private reduced the possibility that his illegal incarceration would induce a confession which otherwise would not have been forthcoming. Perhaps more importantly, Brown subsequently requested the opportunity to make a statement, without any prompting by police. This request came more than 48 hours after his arrest.

In *Hughes v. State* (1979), 179 Ind.App. 336, 385 N.E.2d 461, the Court of Appeals held a confession inadmissible when taken two days after an illegal arrest. However, the evidence in that case clearly showed particularly flagrant conduct by the police, who made the arrest with full knowledge of its illegal nature to "buy time" for further investigation. *Id.*, 179 Ind.App. at

340, 385 N.E.2d at 464. Under those circumstances, suppression of the fruits of the officers' illegal conduct fulfilled the primary goal of the exclusionary rule: deterring police from conducting unreasonable searches and seizures. *See, Brown v. United States,* 422 U.S. 590, 95 S.Ct. 2254.

▪ This case presents quite a different set of facts. There was no evidence of purposeful police improprieties, only an officer's inappropriate evaluation of the strength of the evidence against Brown. We do not condone illegal arrests, but the illegal seizure of the defendant alone does not by itself constitute "flagrant" police conduct under the *Brown* analysis. *Reid v. State,* 444 N.E.2d 1247.

▪ Brown also claims that his second statement to police was inadmissible because it was the result of an "illegal detention." He claims that he was not brought before a magistrate within 24 hours as required by Ind.Code § 36–8–3–11. Defense counsel did not raise this issue at trial and therefore waived it. Brown's assertion that this issue is nevertheless available on appeal because it constitutes fundamental error is incorrect. *Ferry v. State* (1983), Ind., 453 N.E.2d 207.

## II. Admission of Photographs

Numerous photographs were admitted at trial, notwithstanding the trial court's rejection of many of the photographs offered by the State. Brown claims error in the admission of a photograph of the sons' bodies on the bed and three autopsy photographs of the victims. He contends that the State failed to establish the relevancy of the autopsy photographs. He further alleges that the crime scene photograph and two of the three autopsy photographs are cumulative because they "duplicate" other photographs admitted at trial.

▪ Admission of photographs is within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. *Crane v. State* (1978), 269 Ind. 299, 380 N.E.2d 89. Generally, a photograph is relevant and admissible if it depicts an object or scene which a witness would be permitted to describe through testimony. *Hadley v. State* (1986), Ind., 496 N.E.2d 67. Photographs of a victim's corpse in a homicide case are relevant to prove the identity of the victim and as an aid to understanding the pathologist's findings on the cause of death. *Romine v. State* (1983), Ind., 455 N.E.2d 911. Photographs depicting gory, revolting or inflammatory details of the crime may nonetheless be admissible. *Drollinger v. State* (1980), 274 Ind. 5, 408 N.E.2d 1228 (eleven photographs of the crime scene and the murder victims were properly admitted, despite the photographs' gruesome nature). However, photographs must be excluded if they are unnecessary and introduced for the purpose of inflaming the jury's emotions. *Kiefer v. State* (1958), 239 Ind. 103, 153 N.E.2d 899.

▪ The photographs at issue were necessary to establish the cause of death and the manner in which the arson was committed. This evidence was particularly important in light of Brown's disputed confession, which relayed details of the crime scene and the circumstances surrounding the killing. The photographs were admitted during the testimony of the coroner and the fire investigator, who described in detail the scenes depicted in the photographs. While the photographs may have depicted the same scenes displayed in other photographs, each showed a different view of the crime scene or the victims' injuries and therefore were not inadmissible for being cumulative. *Crane v. State,* 380 N.E.2d 89. The disputed photographs were were not introduced solely for the purpose of inflaming the jury's emotions; they were relevant and admissible. Hence, we find no abuse of discretion by the trial court.

## III. Sufficiency of the Evidence

Brown claims that the State failed to prove beyond a reasonable doubt that he possessed premeditated malice in committing the murders. Ind.Code § 35–42–1–1 provides:

A person who: (1) knowingly or intentionally kills another human being; or (2) kills another human being while committing or attempting to commit arson, burglary, child molesting, criminal deviate conduct, kidnapping, rape or robbery; commits murder, a felony.

An earlier murder statute required proof of premeditation. Ind.Code § 35–13–4–1 (Burns 1975) (repealed 1976 Ind.Acts, P.L. 148, § 24, effective Oct. 1, 1977). The current version does not require such a showing. Ind.Code § 35–42–1–1; *Davenport v. State* (1984), Ind., 464 N.E.2d 1302.

The State's evidence of intent was plain enough. Brown threatened to kill Strickland if she dated another man. She did so and a few days later Brown, by his own admission, brutally beat Strickland and her two children. The two children died of broken necks. In an apparent attempt to cover up his crime, Brown poured lighter fluid on the victims' bodies. As Strickland clung to life, Brown ignited the house and the bodies.

Brown also contends that the evidence was insufficient to support the jury's determination that he was the arsonist. He concedes that the fire was intentionally started with an accelerant. He told police that he saw the lighter fluid and that he next remembered the house becoming "wet." He also admitted placing papers on the stove and lighting them. It is undisputed that Brown was at the murder scene about the time that the fire was set, and we have determined that the evidence supported his murder convictions. As the State aptly notes, only the killer would have a motive to burn the bodies and the house. Brown's argument must fail.

The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.