Jeffrey Richard ORTIZ, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 45S00–9806–CR–370.

Supreme Court of Indiana.

Sept. 10, 1999.

Charles E. Stewart, Jr., Crown Point, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

Jeffrey Richard Ortiz was convicted of the murder, felony murder and robbery of Rebecca Ortiz, his adoptive mother. The State requested and the jury recommended that Ortiz be sentenced to life imprisonment without parole for intentionally killing her while committing or attempting to commit robbery. The trial court followed the jury's recommendation. In this direct appeal Ortiz contends that the trial court erred by (1) denying his motion to suppress his statement to police on the ground that he had been arrested without probable cause; (2) denying his motion for mistrial based on the State's soliciting testimony from a police officer about his post-arrest silence; and (3) admitting evidence in violation of Evidence Rule 404(b). He also contends the evidence was insufficient to support the jury's guilty verdicts for robbery and felony murder and its finding of eligibility for life imprisonment without parole based on an intentional killing while committing or attempting to commit robbery. We affirm the trial court.

**Factual and Procedural Background**

In the early evening hours of Wednesday, July 30, 1997, Rebecca Ortiz's lifeless body was found in her bed. She had been strangled and struck in the head several times with a sledgehammer. Her automobile was missing from the garage and Or-

tiz, her adopted son, was not at home. Ortiz had spent the entire day driving several of his friends in his mother's automobile on a shopping spree, using his mother's credit cards to purchase clothing, CDs, an automobile CD player, flowers, and lunch and movie tickets for the group. Police soon learned that Ortiz was not permitted to drive his mother's automobile, that the two had had an argument the previous evening, and that Ortiz was supposed to be out of the house by Friday of that week.

Ortiz was arrested later the same evening. After being advised of his rights, Ortiz was questioned by police the following day. He told police that he had argued with his mother over money, his running up her phone bill with thousands of dollars in 1–900 sex phone calls, and his pushing back his enlistment date in the military. Other witnesses told police, and later testified at trial, that Ortiz had previously stolen money from his mother, had stolen her checks and forged her signature, and had driven her automobile without her permission.

Rebecca's blood was found on the shirt, pants, and shoes that Ortiz was wearing on the night before her body was found. A blood spatter expert concluded that the spatter of blood was consistent with the clothes being worn at the same time that Rebecca was struck with a sledgehammer. A sledgehammer with Rebecca's blood on its head was found in her garage.

## I. Suppression of Statement to Police

■ Ortiz first argues that the trial court erred when it denied his motion to suppress his statement to police on the ground that his arrest was illegal because it was not supported by probable cause.

It is well settled that a police officer may arrest a suspect without a warrant if the officer has probable cause to believe that the suspect has committed a felony. *Peterson v. State*, 674 N.E.2d 528, 536 (Ind. 1996); *Sears v. State*, 668 N.E.2d 662, 666–67 (Ind.1996). Probable cause exists when, at the time of the arrest, the arresting officer has knowledge of facts and circumstances that would warrant a person of reasonable caution to believe that the suspect had committed a criminal act. *Id.* at 667. The amount of evidence necessary to meet the probable cause requirement is determined on a case-by-case basis, *see Peterson*, 674 N.E.2d at 536, and the facts and circumstances need not relate to the same crime with which the suspect is ultimately charged. *Sears*, 668 N.E.2d at 667 n. 10.

■ A police officer testified that, at the time of Ortiz's arrest, the police knew that Rebecca had been found dead and her vehicle was missing; Ortiz, though not permitted to drive the car, had been seen driving the vehicle earlier in the day; Ortiz had been seen purchasing items with a credit card; Rebecca and Ortiz had had an argument or fight on the previous evening; and Rebecca had told Ortiz to be out of the house by Friday of that week. Based on this information, the trial court found that there was enough information to support probable cause under *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). We agree that the police had probable cause to believe that Ortiz had committed auto theft, if not murder. Accordingly, his arrest was not unlawful, and the trial court did not err in denying the motion to suppress.[1]

---

1. Ortiz's points to *Hughes v. State*, 179 Ind. App. 336, 385 N.E.2d 461 (1979). In *Hughes*, the detectives "candidly admitted that they did not have probable cause to arrest" the defendant but rather arrested him on the authority of a bench warrant that had been issued in an unrelated case fourteen months earlier. *Id.* at 337, 385 N.E.2d at 463. The Court of Appeals held that the bench warrant was void because it had expired and observed that "[t]he State's candid admissions of no probable cause on other grounds eliminates the only possible cure." *Id.* at 339, 385 N.E.2d at 464. Accordingly, Hughes' conviction was reversed. Here, unlike *Hughes*, the police had probable cause to believe that Ortiz had committed a felony and his arrest was therefore not illegal.

## II. Motion for Mistrial

Ortiz next contends that the trial court erred in denying his motion for mistrial. The motion was made after the following questions were asked of a detective by the prosecutor:

Q. Do you recall how the interview [with the defendant] ended?

A. Yes.

Q. How was that?

A. I made the comment to the defendant that he could not say that he did not kill his mother?

Defense counsel then asked to approach the bench, and the prosecutor stated in the bench conference that the detective had repeated his charge that Ortiz was not denying the crime several times before Ortiz finally answered. Ortiz asked that the detective's answer be stricken and that the jury be admonished. He also moved for a mistrial. The trial court ordered the answer stricken and admonished the jury to disregard it, but denied the motion for mistrial.

Ortiz contends that the State "deliberately elicited testimony from [the detective] that the defendant exercised his right to remain silent during post-arrest police interrogation" in violation of the principles set forth in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). We disagree. In *Doyle*, the defendants refused to speak to police after their arrest and offered an exculpatory version of events when they testified at trial. To impeach this testimony the prosecutor repeatedly asked them on cross-examination why they did not offer that version to police after their arrest but instead chose to remain silent. The U.S. Supreme Court reversed their convictions, holding that it was fundamentally unfair and a deprivation of due process to advise defendants of their right to remain silent and then punish them for choosing to exercise that right. *Id.* at 618, 96 S.Ct. 2240.

More recently, in *Greer v. Miller*, 483 U.S. 756, 764, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987), the U.S. Supreme Court observed that "in each of the cases in which this Court has applied *Doyle*, the trial court has permitted specific inquiry or argument respecting the defendant's post-*Miranda* silence." The Court characterized the holding of *Doyle* as barring " *'the use* for impeachment purposes' of a defendant's postarrest silence." *Id.* at 763, 107 S.Ct. 3102 (quoting *Doyle*, 426 U.S. at 619, 96 S.Ct. 2240) (emphasis added by *Greer* ). " '[I]t does not comport with due process *to permit* the prosecution during the trial to call attention to [the defendant's] silence....' " *Doyle*, 426 U.S. at 619, 96 S.Ct. 2240 (quoting *United States v. Hale*, 422 U.S. 171, 182–83, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975) (White, J., concurring in judgment)) (emphasis added by *Greer*, 483 U.S. at 763–64, 107 S.Ct. 3102).

In *Greer*, the prosecutor asked the defendant during cross-examination, "Why didn't you tell this story to·anybody when you got arrested?" 483 U.S. at 759, 107 S.Ct. 3102 Defense counsel objected and moved for a mistrial. The trial court denied the motion, but instructed the jury to "ignore [the] question, for the time being." *Id.* The prosecutor did not pursue the issue further nor did he mention it during closing argument. Because the prosecutor "was not 'allowed to undertake impeachment on,' or 'permit[ted] ... to call attention to,' " the defendant's silence, the Court held that his silence was "not submitted to the jury as evidence from which it was allowed to draw any permissible inference, and thus no *Doyle* violation occurred in this case." *Id.* at 764–65, 107 S.Ct. 3102 (quoting *Doyle* 426 U.S. at 619 & n. 10, 96 S.Ct. 2240).

The sequence of events here is similar to *Greer*. The detective offered a single response that, at most, obliquely suggested that Ortiz had exercised his constitutional right to remain silent. Indeed, the detective's testimony was consistent with Ortiz's having spoken on the subject but not having categorically denied guilt. Although the prosecutor then began to ask

a question that would have pursued that testimony further, defense counsel promptly objected. The objection was sustained, the jury was admonished to disregard what had been said, and the prosecutor asked no further questions on the subject and made no mention of it during her closing argument. Under these circumstances, there was no *Doyle* violation and a mistrial was not required, even if the testimony is taken as suggesting silence on Ortiz's part. *Greer*, 483 U.S. at 764–65, 107 S.Ct. 3102; *see also Cook v. State*, 544 N.E.2d 1359, 1363 (Ind.1989) (finding no *Doyle* error or grounds for mistrial based on "an isolated statement" by a law enforcement officer).

### III. Prior Bad Acts

Ortiz argues that the trial court erred in admitting evidence of prejudicial acts he allegedly committed before the murder of his mother. In particular, Ortiz objected at trial to evidence that his mother had planned to kick him out of her house because he had stolen money from her, that he had stolen checks from her and forged her signature, that he had run up her phone bill, and that he had used her automobile without her permission.

▬▬▬ Evidence Rule 404(b) provides that

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan knowledge, identity, or absence of mistake or accident. . . .

In assessing admissibility of 404(b) evidence the court must (1) determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403. *Hicks v. State*, 690 N.E.2d 215, 221 (Ind.1997). Evidence of motive is always relevant in the proof of a crime, and a defendant's prior actions with respect to the victim are also usually admissible to show the relationship between the two. *Ross v. State*, 676 N.E.2d 339, 346 (Ind.1996). Here, the State offered this evidence to show the defendant's motive for killing his mother. Although Ortiz contended at trial, as he does on appeal, that this evidence was admitted to show his bad character and his propensity to act in conformity with the prior bad acts,[2] the trial court specifically found that the testimony went to motive and intent. This satisfied Rule 404(b). Moreover, the trial court did not abuse its discretion under Rule 403 by finding its probative value not substantially outweighed by any potential prejudice that might arise from the generally unfavorable portrait of Ortiz that arises.

### IV. Sufficiency of the Evidence for Robbery

As a final point, Ortiz contends that there is insufficient evidence to prove that he committed a robbery. As a result, he argues that his robbery conviction should be reversed and that his felony murder conviction falls with it.

The Class A felony robbery count filed against Ortiz charged him with knowingly or intentionally taking "one or more credit cards and/or a 1989 Ford Tempo . . . from the person or presence of Rebecca Ortiz by using or threatening the use of force on

---

**2.** Ortiz contends that the State's "true purpose" is illustrated by the State's closing argument, in which the prosecutor told the jury that

> "[t]o acquit the defendant of his mother's murder, you must believe that all of the evidence can be explained away as coincidence, coincidence that he was in posses-

sion of the car, that she had accused him of stealing to others, coincidence that he was in possession of her phone and credit cards, coincidence that this was the last day he was supposed to be in that house or she was kicking him out, coincidence that she told others he's threatening me, I am petrified of Jeffrey."

Rebecca Ortiz, which resulted in serious bodily injury to Rebecca Ortiz...." Ortiz does not attack the sufficiency of evidence that he knowingly or intentionally killed his mother, and the evidence presented at trial showed that this killing was the result of the use of force. Ortiz's argument focuses on the sequence of events and the contention that there is no evidence that the use of force was necessary to obtain possession of the credit cards or automobile.

■ Although Ortiz secured a lesser included offense instruction for theft, the jury found him guilty of robbery. The only reasonable inference, and the one that supports the verdict, is that the jury believed the use of force was either necessary to take the property or at least facilitated it. *See generally* 2 Wayne R. La-Fave & Austin W. Scott, Jr., Substantive Criminal Law § 8.11(d)(1) at 447 (1986) ("One may commit robbery by striking his victim with fist or weapon and then, having thus rendered the victim unconscious or dazed or unwilling to risk another blow, taking his property away from him.").

■ Ortiz also attacks the sufficiency of the evidence to support a taking of property from Rebecca's "person" or "presence" as required by the robbery statute. The stolen credit cards were taken from Rebecca's purse, which was found in the kitchen, and her automobile was taken from her garage. Because she was killed in her bedroom, most likely while she slept, Ortiz contends that the property was not taken from her "person or presence." The State responds that the credit cards and automobile were under Rebecca's control and that she could have assert-

ed and retained control over them but for Ortiz's brutal attack upon her. We agree that the fact that she was in a different room from the car and the purse does not necessarily remove these items from her "presence." In *Groce v. State*, 250 Ind. 582, 236 N.E.2d 597 (1968), this Court upheld a robbery conviction in which the defendant had taken a purse left on a dining room table ten to twelve feet from the kitchen where the victim was attacked at knifepoint. The Court observed that

> "[t]he words 'from the person of another' contained in the robbery statute are not so strictly construed as to exclude the taking of property from the immediate presence of the person." Taking from another room has been held to be taking from the "presence" as required by a statute such as ours.

*Id.* at 585, 236 N.E.2d at 599 (quoting *Mahoney v. State*, 203 Ind. 421, 424, 180 N.E. 580, 581 (1931)).[3] Similarly, in *Paulson v. State*, 181 Ind.App. 559, 393 N.E.2d 211, 213 (1979), the Court of Appeals found no merit to a sufficiency challenge in a case in which the victim was attacked and beaten in her automobile, escaped as she was being removed from the automobile but left her purse inside, and returned to find the purse gone. The defendant contended that the evidence supported only a conviction for theft because "[t]he only reasonable inference from the testimony is that the appellant [Paulson] removed the purse from the victim's car after the victim left the car." *Id.* at 562, 393 N.E.2d at 213. The court found sufficient evidence for robbery because the defendant's attack on the victim caused her to flee the car, thereby preventing her from retaining control of her purse. Therefore, the court

---

3. *Groce* also relied on *Chizum v. State*, 203 Ind. 450, 180 N.E. 674 (1931), in which the defendant moved to quash an affidavit charging him with robbery because it did not allege that the stolen objects, two slot machines and the money inside them, were taken "from the person" of the victim. This Court upheld the denial of the motion to quash. "While the affidavit does not charge the taking of the slot machines and money from the person of Lutz, yet the language used is equivalent to saying that they were taken from his presence or from his possession which ... is sufficient to charge robbery...." *Id.* at 454, 180 N.E. at 675. "[I]t is not essential to a conviction for the crime of robbery ... 'that the property be taken from the body of the person wronged. It is sufficient if taken from his personal presence or personal protection.'" *Id.* at 453, 180 N.E. at 675 (quoting *Hill v. State*, 42 Neb. 503, 60 N.W. 916, 923 (1894)).

held that the "subsequent taking of the purse from the victim's car was a 'taking' from her 'presence' within the meaning of the statute." *Id. See also Wash v. State*, 408 N.E.2d 634, 637 (Ind.Ct.App.1980) ("The victim's immediate or actual presence to the taking of the property is not required."); LaFave & Scott, *supra* § 8.11(c).

▓ Ortiz does not contest that the missing credit cards and automobile were Rebecca's property and were taken from her home. The jury could have reasonably inferred, as the Court of Appeals did in *Paulson*, that Ortiz's beating of his mother with a sledgehammer prevented her from retaining control over her property. Moreover, *Groce* makes clear that a sufficiency challenge will not prevail merely because the taking of property and the use of force occurred in different rooms.

▓ Our standard of review for sufficiency claims is well settled. We do not reweigh evidence or assess the credibility of witnesses. Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict and will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Garrett v. State*, 714 N.E.2d 618, 621 (Ind.1999); *Taylor v. State*, 681 N.E.2d 1105, 1110 (Ind.1997). Drawing all reasonable inferences in support of the jury's verdict, there is sufficient evidence to support Ortiz's convictions for robbery and felony murder, and the finding that he intentionally killed Rebecca while committing or attempting to commit robbery.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.