

**FILED**

Sep 30 2016, 9:02 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Darren Bedwell
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert Kadrovach,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | September 30, 2016<br><br>Court of Appeals Case No.<br>49A02-1510-CR-1738<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable Mark D. Stoner,<br>Judge<br><br>Trial Court Cause No.<br>49G06-1408-FA-40680 |

**Crone, Judge.**

# Case Summary

[1]     Robert Kadrovach appeals his conviction for class A felony attempted murder resulting from a stabbing incident in downtown Indianapolis. He asserts that the trial court fundamentally erred in instructing the jury as to the mens rea necessary to convict him of attempted murder. Concluding that he has failed to establish fundamental error, we affirm.

# Facts and Procedural History

[2]     Around 10:00 p.m. on June 21, 2014, Ohnjay Walker and a group of his friends left a backyard barbeque on Indianapolis's far northeast side and headed for a downtown bar. Kadrovach was operating a hotdog stand in a parking lot across from the bar, with the assistance of Frank McCampbell. After Walker and his friends spent some time inside the bar, they decided to buy some hotdogs from Kadrovach. During the transaction, McCampbell spilled jalapeño peppers on a couple of Walker's friends, and two of them asked for a refund. Kadrovach refused to give them refunds, and a scuffle ensued. Walker said that he wanted a bag of chips in lieu of a refund, and as he reached for the chips, McCampbell shoved him. The scuffle escalated to a fight, and two of Walker's friends noticed that Kadrovach had pulled out a knife. Walker turned to walk away, and Kadrovach struck him in the head with the knife. With the blade of the knife lodged in his skull and blood running down the side of his head, the mumbling and slouching Walker attempted to get to his friend's vehicle. Friends and bar personnel phoned 911, and police arrived on the

scene. Officers took statements, found the knife handle on the ground nearby, and arrested Kadrovach.

[3] With the blade still embedded in his skull, Walker was taken to a nearby hospital, where he underwent a craniotomy. The attending neurosurgeon explained that the knife had to be removed slowly to avoid fatal blood loss. The knife had penetrated to the midline of Walker's brain, in close proximity to the carotid and middle cerebral arteries, in an area vital to motor function and short-term memory.

[4] The State charged Kadrovach with class A felony attempted murder and class B felony aggravated battery. During his trial, he did not object to the jury instructions that addressed the elements of attempted murder. The jury found him guilty as charged, and the trial court merged the aggravated battery conviction into the attempted murder conviction. Kadrovach now appeals.

## Discussion and Decision

[5] Kadrovach maintains that the jury instructions misled the jury concerning the requisite mens rea for attempted murder. Because he failed to object during trial, he concedes that he must establish fundamental error. *McKinley v. State*, 45 N.E.3d 25, 28 (Ind. Ct. App. 2015), *trans. denied* (2016). The fundamental error exception to the contemporaneous objection rule is extremely narrow and applies only when an error constitutes a blatant violation of basic due process principles and the harm or potential for harm is substantial. *Isom v. State*, 31 N.E.3d 469, 490 (Ind. 2015), *cert. denied* (2016). When determining whether

fundamental error has occurred with respect to an allegedly improper jury instruction, we do not examine the instruction in isolation but rather in the context of all relevant information presented to the jury, including closing argument and other instructions. *McKinley*, 45 N.E.3d at 28. "[W]here all such information, considered as a whole, does not mislead the jury as to a correct understanding of the law," there is no due process violation and thus no fundamental error. *Id.* at 28-29.

[6] The jury convicted Kadrovach of attempted murder. Indiana Code Section 35-42-1-1(1) reads, in pertinent part, with respect to the offense of murder, "A person who … knowingly or intentionally kills another human being … commits murder, a felony." With respect to what constitutes an "attempt," Indiana Code Section 35-41-5-1(a)[1] states:

> A person attempts to commit a crime when, acting with the culpability required for commission of the crime, the person engages in conduct that constitutes a substantial step toward commission of the crime. An attempt to commit a crime is a felony or misdemeanor of the same level or class as the crime attempted. However, an attempt to commit murder is a Class A felony.

[7] "The purpose of a jury instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Isom*, 31 N.E.3d at 484

---

[1] We quote the version of the statute in effect when Kadrovach committed his offense in June 2014.

(internal quotation marks omitted). In *Spradlin v. State*, our supreme court established that a jury instruction setting forth the elements of attempted murder must inform the jury that the State is required to "prove beyond a reasonable doubt that the defendant, with *intent to kill the victim*, engaged in conduct which was a substantial step toward such killing." 569 N.E.2d 948, 950 (Ind. 1991) (emphasis added). Since *Spradlin*, our supreme court has consistently held that the "intent to kill" language must be included in instructions defining attempted murder and that simply using "knowingly" or "knowingly or intentionally" does not suffice where the offense is attempted murder.[2] However, as noted in *Williams v. State*, 737 N.E.2d 734, 737 (Ind. 2000), even in cases where there has been clear *Spradlin* error, our supreme court has, at times, not vacated the attempted murder conviction because it has found that the intent of the perpetrator was not a central issue at trial and/or that the instructions as a whole sufficiently suggested the requirement of intent to kill. *See, e.g.*, *Swallows v. State*, 674 N.E.2d 1317, 1318 (Ind. 1996) (intent of perpetrator not central issue at trial); *Ramsey v. State*, 723 N.E.2d 869, 872-73 (Ind. 2000) (instructions as a whole sufficiently suggested requirement of intent to kill); *Jackson v. State*, 575 N.E.2d 617, 621 (Ind. 1991) (intent of perpetrator not central issue and instructions as a whole sufficient on intent to kill). Kadrovach correctly asserts that his intent was a central issue below. As such,

---

[2] Cases in which "knowingly" was insufficient in defining attempted murder include: *Metcalfe v. State*, 715 N.E.2d 1236, 1237 (Ind. 1999) (fundamental error); *Taylor v. State*, 616 N.E.2d 748, 749 (Ind. 1993); *Woodcox v. State*, 591 N.E.2d 1019, 1023 (Ind. 1992). Cases in which "knowingly or intentionally" was insufficient in defining attempted murder include: *Wilson v. State*, 644 N.E.2d 555, 556 (Ind. 1994) (fundamental error); *Greer v. State*, 643 N.E.2d 324, 325 (Ind. 1994); *Hill v. State*, 615 N.E.2d 97, 98 (Ind. 1992).

we limit our discussion to whether the instructions as a whole sufficiently suggest the requirement of intent to kill.

[8] Kadrovach submits that Instructions 8 and 9, read in conjunction, are misleading and could convey the notion that the jury needed only to find that he acted "knowingly" in order to convict him of attempted murder. Instruction 8 reads:

> The crime of *murder* is defined as a person who *knowingly* kills another human being.
>
> The crime of *attempted murder* is defined as follows:
> A person attempts to commit murder when, *acting with the specific intent to kill another person*, he engages in conduct that constitutes a substantial step toward killing that person.
>
> To convict the Defendant, the State must prove each of the following elements:
> 1. The Defendant, Robert Kadrovach,
> 2. *acting with the specific intent to kill Ohnjay Walker*,
> 3. did engage in conduct, that is: stabbing with a deadly weapon, that is: a knife, at and against the person of Ohnjay Walker,
> 4. which conduct constituted a substantial step toward the commission of said crime of murder.
>
> If the State fails to prove each of these elements beyond a reasonable doubt, you must find the Defendant Robert Kadrovach, not guilty of attempt[ed] murder, a Class A felony, as charged in Count I.

Appellant's App. at 144 (emphases added). Instruction 9 reads:

> The crime of attempt is defined by statute as follows:
> "A person attempts to commit a crime when, *acting with the culpability required for the commission of the crime*, he engages in conduct that constitutes a substantial step toward the commission of the crime." An attempt to commit a crime is a felony or misdemeanor of the same class as the crime attempted.

*Id*. at 145 (emphasis added).[3]

[9] Instruction 8 twice informed the jury that in order to convict Kadrovach of attempted murder, the jury was required to find that he acted with the specific intent to kill Walker. As such, the instruction included the language necessary to satisfy the requirements of *Spradlin*. Notwithstanding, Kadrovach points us to Instruction 9's definition of "attempt," which emphasizes that the culpability required for an attempt must be the same as the culpability for the offense that was attempted. Ind. Code § 35-41-5-1(a). He then directs our attention to the first sentence of Instruction 8, which omits from its definition of murder the statutory phrase "or intentionally." Ind. Code § 35-42-1-1(1). He correctly asserts that this amounts to an incomplete definition of *murder*. However, we must assess the implications of the misstatement on his conviction for attempted murder.

---

[3] Instruction 9 used the term "culpability," which was not defined elsewhere in the jury instructions. Instruction 12 stated, "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Appellant's App. at 148. Instruction 13 stated, "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." *Id*. at 149. Instruction 11 defined aggravated battery, an offense of which Kadrovach was also convicted but which was merged into his attempted murder conviction and which requires a "knowing" act by the defendant. *Id*. at 147.

[10] Kadrovach contends that despite the inclusion of the *Spradlin* language in Instruction 8's definition of attempted murder, he was denied a fair trial because the omission of "or intentionally" rendered the definition of murder incomplete. He relies on *Rosales v. State*, 23 N.E.3d 8 (Ind. 2015), as support for his argument. In *Rosales*, our supreme court extended *Spradlin*'s heightened requirement of "specific intent to kill" to jury instructions on attempted murder as an accomplice. *Id*. at 15. *Rosales* is factually distinguishable because it involved an inaccurate instruction concerning accomplice liability.[4] Moreover, there, the prosecutor emphasized the inaccurate information by repeatedly stating during closing argument that Rosales could be guilty as an accomplice if he knowingly aided in the attempted murder. *Id*. In contrast, here, Kadrovach was charged with attempted murder as a direct actor, and there was no similar emphasis on an inaccurate mens rea standard by the State during closing argument.

[11] In considering Instructions 8 and 9 together, we first note the difference in specificity. Instruction 8 included not only the *Spradlin* definition of attempted murder but also a list of elements that the State was required to prove specifically with respect to Kadrovach. This included (1) a straightforward admonition that to find Kadrovach guilty of attempted murder, the jury must find that he acted *with the specific intent to kill Walker*; and (2) a charge to the jury

---

[4] In *Rosales*, the accomplice liability instruction stated, "[a] person who knowingly or intentionally aids, induces or causes another person to commit an offense commits that offense … [a]n accomplice is liable for the acts of the principal which, even if not a part of their original plan, are probable and natural consequences thereof." 23 N.E.3d at 10-11.

that if it finds that the State had failed to prove any one of the elements on the list beyond a reasonable doubt, it must find Kadrovach not guilty. In contrast, Instruction 9 included a general, statutory definition of an "attempt" to commit *any* offense, stating that the "culpability" necessary to prove an attempt is the same level as is required for the offense itself. Unlike Instruction 8, Instruction 9 did not follow up with a statement such as, "The intent necessary to prove that Kadrovach committed the offense of attempted murder is the same as the intent that would be required to prove that he committed murder." Without such a connection, it is unlikely that the jury's attention would have been drawn to the mens rea for murder, especially in the face of such a complete and accurate statement that in order to convict Kadrovach of attempted murder, the jury had to find that he acted with the specific intent to kill Walker.

[12] Moreover, Kadrovach bases his fundamental error argument on the omission of the phrase "or intentionally" from the definition of *murder*. However, even if this phrase had been included, Instructions 8 and 9 would not have been in sync post-*Spradlin*, because murder and attempted murder are no longer subject to the same level of culpability. In other words, Instruction 9 tracked the language of Indiana Code Section 35-41-5-1(a), which defines a criminal "attempt," and while the language is accurate concerning an attempt to commit other offenses, it is no longer accurate where the attempted offense is murder. As such, we believe that in cases where a conviction for attempted murder is a possible outcome, the best practice would be to either not give Instruction 9 or, if necessary because of other possible attempt crimes, to supplement the attempt

instruction with a statement that to convict a person of attempted murder, the State must prove that he/she acted with the specific intent to kill the victim.

[13] Given that Instruction 8 specifically emphasized the intent to kill requirement, we believe that the instructions as a whole were sufficient to indicate that "intent to kill" was required in order to convict Kadrovach of attempted murder. As a result, we do not believe that the jury was misled by the challenged jury instructions. Finding that Kadrovach has failed to establish that he was deprived of a fair trial as a result of the challenged jury instructions, we conclude that the error did not rise to the level of fundamental error. Accordingly, we affirm.

[14] Affirmed.

Kirsch, J., and May, J., concur.