## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Bruce W. Graham
Graham Law Firm P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jacob T. McDaniel,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 31, 2017

Court of Appeals Case No.
79A04-1612-CR-2877

Appeal from the
Tippecanoe Superior Court

The Honorable
Randy J. Williams, Judge

Trial Court Cause No.
79D01-1602-F2-2

**Kirsch, Judge.**

Jacob T. McDaniel ("McDaniel") was convicted after a jury trial of robbery[1] as a Level 2 felony, criminal confinement[2] as a Level 5 felony, battery[3] as a Level 5 felony, auto theft[4] as a Level 6 felony, theft[5] as a Class A misdemeanor, possession of marijuana[6] as a Class B misdemeanor, and four counts of invasion of privacy,[7] each as a Class A misdemeanor. He was sentenced to an aggregate thirty-seven years with five years suspended. McDaniel raises the following restated issues for our review on appeal:

> I. Whether McDaniel's convictions for robbery, criminal confinement, and battery violate double jeopardy;
>
> II. Whether the trial court committed fundamental error in giving certain jury instructions to the jury; and
>
> III. Whether sufficient evidence was presented to support McDaniel's conviction for robbery.

We affirm.

---

[1] *See* Ind. Code § 35-42-5-1.

[2] *See* Ind. Code § 35-42-3-3(a), (b)(1)(C).

[3] *See* Ind. Code § 35-42-2-1(b)(1), (f)(1).

[4] *See* Ind. Code § 35-43-4-2.5(b).

[5] *See* Ind. Code § 35-43-4-2(a).

[6] *See* Ind. Code § 35-48-4-11(a).

[7] *See* Ind. Code § 35-46-1-15.1.

## Facts and Procedural History

[3] Kenneth Nice ("Nice") was an elderly man who lived in Lafayette, Indiana and would occasionally help young people who were having difficulty with life get back on their feet. One of the young people that Nice helped was McDaniel. Nice allowed McDaniel to live with him from November 2015 through early February 2016. During this time, Nice provided McDaniel with food and a bedroom and private bath to use at Nice's home. In February of 2016, Nice asked McDaniel to move out because he believed McDaniel was using drugs.

[4] On February 8, 2016, after he had moved out of Nice's home, McDaniel called Nice and asked him for money for groceries. Nice told McDaniel that he was preparing a meal and invited McDaniel to come to the house and eat. McDaniel accepted the invitation, and when McDaniel arrived, Nice let him in and then went back to the kitchen. McDaniel went downstairs and apparently noticed a bedspread on a bed which he had not seen before. McDaniel yelled for Nice to come downstairs, and Nice did so. After Nice explained the meaning of the quilt to McDaniel, he turned around to leave, and McDaniel grabbed him from behind. Nice struggled to get away and yelled for McDaniel to let go of him. McDaniel then struck Nice in the head and "knocked [him] out." *Tr. Vol. II* at 115-16.

[5] After being unconscious for an unknown amount of time, Nice regained consciousness and found himself lying in a spare bedroom downstairs. Nice discovered that his ankles, hands, face, neck, and head had been wrapped in duct tape, and he was unable to move. Nice could only see through a tiny hole

in the tape by his left eye. Sometime after Nice regained consciousness, McDaniel returned to the spare bedroom and sprinkled something on Nice, which Nice later learned was bleach. *Id*. at 116-17. Nice did not move, hoping that McDaniel would believe he was still unconscious. Nice waited until he thought that McDaniel had left the residence, and then began working on extricating himself from the duct tape. Nice discovered that McDaniel had blocked the door to the spare bedroom with a table, but Nice was able to push the door open.

[6] Nice went into the kitchen and used a knife to cut the tape from his ankles. When Nice tried to use the phone to call for help, he found that McDaniel had disabled it, so Nice went to a neighbor's house to get help. The neighbor called 911, and Lafayette Police Department Officer Robert Petillo ("Officer Petillo") was dispatched to the neighbor's home. Officer Petillo observed that Nice's head was "covered in blood" and that there was swelling of Nice's right eye. *Id*. at 24. Nice was still bound with duct tape around his wrists and still had tape around his face area. It was difficult for Officer Petillo to assess the extent of Nice's injuries because of the amount of blood. Nice provided Officer Petillo with the name of his attacker, and when officers learned that Nice's Nissan Maxima was missing, a description of the vehicle and license plate number was broadcast to law enforcement.

[7] As the investigation proceeded, officers learned that a television, a jewelry box, a gold watch, a wallet, some tax papers, and Nice's dog had been taken from his home. Later that afternoon, Lafayette Police Department Officer Arron

Dobrin ("Officer Dobrin") was on patrol and observed the stolen Nissan. The Nissan evaded the officer, but Officer Dobrin noticed that the driver was wearing a red hat. Shortly thereafter, officers located the Nissan in a parking lot at the River's Edge apartments. Officer Dobrin had previously obtained a photograph of McDaniel and noticed McDaniel walking away from the apartments. Officer Dobrin also observed that McDaniel was wearing a red hat and matched the photo of the suspect. Officer Dobrin stopped McDaniel and placed him under arrest at that time. The Nissan was searched, and the officers found several of the items stolen from Nice in the car. The police also found other items not belonging to Nice in the vehicle, and two of the items contained DNA that matched McDaniel. *Id*. at 92, 245-48.

[8] Meanwhile, Nice was taken to the hospital and treated by Lindsey Spurgeon ("Spurgeon"), a registered nurse. When Spurgeon encountered Nice, she noticed that he was "covered in blood." *Id*. at 168. Spurgeon also observed that Nice had "visible injuries and deformities to the face" and that "his clothes smelled of bleach." *Id*. Nice told Spurgeon that someone "had repeatedly kicked him and hit him in the head and that he believed that he had lost consciousness." *Id*. at 169. Spurgeon observed that Nice "had a deformity to the nose, bleeding from the nose, bruising and swelling to the right eye, . . . [and] an open actively bleeding laceration to the right side of his face." *Id*. at 171. Spurgeon also saw that Nice "had visible injury to the left side of his head." *Id*. Additionally, Spurgeon noticed "injuries to [Nice's] wrist and ankles [that] were consistent with being duct taped." *Id*. at 172.

[9] A CT scan was performed on Nice's head and showed that he had a "left subdural hematoma," which was "classified as a traumatic brain injury" and can be a life-threatening injury. *Id*. at 173, 175. A CT scan of Nice's face showed that he had multiple facial injuries, which included "bilateral non-displaced superial nasal bone fractures," a "displaced nasal septil fracture," a "displaced anterial wall sinus fracture," an "intra-sinus hemorrhage," and "soft tissue hematoma" "under his right nasal region." *Id*. at 175-77. Nice also "had an elevated serum lactate," which can cause a person to go into "shock," and was admitted to the hospital. *Id*. at 177.

[10] On February 12, 2016, the State charged McDaniel with Level 2 felony robbery, Level 5 felony criminal confinement, Level 5 felony battery, Level 6 felony auto theft, Class A misdemeanor theft, and Class B misdemeanor possession of marijuana.[8] After McDaniel's arrest, a no contact order was issued, ordering McDaniel to not have contact with Nice. While incarcerated, McDaniel placed several phone calls to Nice. As a result, the State additionally charged McDaniel with five counts of Class A misdemeanor invasion of privacy. A jury trial was held, and at the conclusion, McDaniel was found guilty on all counts. The trial court sentenced him to a thirty-seven-year aggregate sentence with five years suspended, for a total of thirty-two years executed. McDaniel now appeals.

---

[8] McDaniel was also charged with Class A misdemeanor possession of marijuana, which was later dismissed.

# Discussion and Decision

## I.    Double Jeopardy

McDaniel argues that his convictions for robbery, criminal confinement, and battery violate the double jeopardy provision of the Indiana Constitution. The Indiana Double Jeopardy Clause provides, "No person shall be put in jeopardy twice for the same offense." Ind. Const. art. I, § 14. We analyze alleged violations of this clause pursuant to our Supreme Court's opinion in *Richardson v. State,* 717 N.E.2d 32 (Ind. 1999). In *Richardson,* our Supreme Court held that "two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." 717 N.E.2d at 49 (emphasis in original).

Under the "actual evidence" test, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish all of the essential elements of a second challenged offense. *Bunch v. State*, 937 N.E.2d 839, 845-46 (Ind. Ct. App. 2010) (citing *Richardson*, 717 N.E.2d at 53), *trans. denied*. Double jeopardy is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense. *Moore v. State*, 882 N.E.2d 788, 794 (Ind. Ct. App. 2008) (citing *Smith v. State,* 872 N.E.2d 169, 176 (Ind. Ct. App. 2007), *trans. denied*).

[13] McDaniel first contends that his convictions for both robbery and criminal confinement violate double jeopardy. He asserts that criminal confinement is a lesser included offense of robbery because the force element of robbery constitutes confinement, which is defined as a substantial interference with a person's liberty. McDaniel argues that, in the present case, Nice was struck in the head, rendered unconscious, and confined with duct tape, and based on this evidence, the confinement was the force used to complete the robbery.

[14] McDaniel relies on *Wethington v. State*, 560 N.E.2d 496 (Ind. 1990) for his contention that criminal confinement is a lesser included offense of robbery. In *Wethington*, our Supreme Court found a double jeopardy violation where "the factual basis underlying the criminal confinement charge was the same conduct alleged by the State to establish the 'by force' element necessary to support its charge of robbery." *Id*. at 507. However, the Court noted that its holding was limited to cases similar to Wethington's "where criminal confinement is charged along with another crime, the commission of which inherently involves a restraint on the victim's liberty," and where the language of the charging instrument "makes no distinction between the factual basis for the confinement charge and the facts necessary to the proof of an element of the other crime." *Id*. at 508.

[15] Here, unlike in *Wethington*, the charging informations for robbery and criminal confinement did make a factual distinction between the factual basis for the criminal confinement charge and the facts necessary to prove an element of the robbery charge. The criminal confinement charge mentioned the fact that "duct

tape [was] used on Nice's head, hands, and legs," while the robbery charge focused on the serious bodily injury that Nice suffered, which included "unconsciousness, subdural hematoma, and/or sinus and nasal bone fractures." *Appellant's App.* at 28-29. Therefore, to convict McDaniel of the robbery charge, the State was required to prove that Nice sustained serious bodily injury of unconsciousness, subdural hematoma, and sinus and nasal fractures, which the criminal confinement charge did not require, and the criminal confinement charge required the State to prove that Nice suffered bodily injury from being bound with duct tape on his head, ankles, and hands. *Id.* at 28-29. "[A]s long as 'each conviction require[s] proof of at least one unique evidentiary fact,' no violation of the actual evidence test occurs." *Weddle v. State*, 997 N.E.2d 45, 47 (Ind. Ct. App. 2013) (quoting *Bald v. State*, 766 N.E.2d 1170, 1172 (Ind. 2002)), *trans. denied*. Because McDaniel's convictions for robbery and criminal confinement required proof of at least one unique evidentiary fact, they do not violate double jeopardy.

[16] McDaniel next argues that his convictions for robbery and for battery violate double jeopardy under the actual evidence test. He claims that the evidence required to prove battery, the fact that McDaniel struck Nice in the head, was the same evidence required to prove the force alleged to support robbery. McDaniel, therefore, asserts that the same evidence would have been used and relied on by the jury to convict him of battery and robbery.

[17] Under the "actual evidence" test, double jeopardy is not violated when the evidentiary facts establishing the essential elements of one offense also establish

only one or even several, but not all, of the essential elements of a second offense. *Moore*, 882 N.E.2d at 794. In the present case, the crimes of battery and robbery do not share all the same facts or all the same elements. The crime of robbery required proof of the taking of another's property, which is an element not required for the crime of battery. The evidence presented to support McDaniel's robbery conviction included that McDaniel took personal property, a car, and a dog from Nice. Evidence that McDaniel took these items was not necessary to prove that he committed battery. The evidence further showed that McDaniel used force on Nice on more than one instance as Nice testified that McDaniel "repeatedly kicked him and hit him in the head." *Tr. Vol. II* at 169. Additionally, although both crimes required proof of serious bodily injury, the evidence at trial established that Nice sustained multiple injuries that qualified as serious bodily injury, specifically loss of consciousness, sinus and nasal fractures, and a subdural hematoma. *Id.* at 169, 173-77. We, therefore, conclude that there was no reasonable possibility that the evidentiary facts used by the jury to establish the essential elements of robbery were also used to establish all of the essential elements of battery. *Bunch*, 937 N.E.2d at 845-46. McDaniel's convictions for both robbery and battery do not violate double jeopardy.

## II. Jury Instruction

[18] Instructing the jury lies within the sole discretion of the trial court. *Eberle v. State*, 942 N.E.2d 848, 861 (Ind. Ct. App. 2011), *trans. denied*. We review a trial court's decision to give or refuse to give an instruction for an abuse of

discretion. *Williams v. State,* 891 N.E.2d 621, 630 (Ind. Ct. App. 2008). An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Eberle*, 942 N.E.2d at 861.

[19] McDaniel contends that the jury instruction given by the trial court invaded the province of the jury and deprived him of his right to a trial by jury. Because he failed to object during trial, McDaniel concedes that he must establish fundamental error. *Kadrovach v. State*, 61 N.E.3d 1241, 1243 (Ind. Ct. App. 2016), *trans. denied*. The fundamental error exception to the contemporaneous objection rule is extremely narrow and applies only when an error constitutes a blatant violation of basic due process principles and the harm or potential for harm is substantial. *Isom v. State,* 31 N.E.3d 469, 490 (Ind. 2015), *cert. denied*, 136 S. Ct. 1161 (2016). "When determining whether fundamental error has occurred with respect to an allegedly improper jury instruction, we do not examine the instruction in isolation but rather in the context of all relevant information presented to the jury, including closing argument and other instructions." *Kadrovach*, 61 N.E.3d at 1243. Where all such information, considered as a whole, does not mislead the jury as to a correct understanding of the law, there is no due process violation, and thus, no fundamental error has occurred. *Id.*

[20] In the present case, McDaniel asserts that the trial court committed fundamental error when it gave the following instructions to the jury, which both relate to the crime of robbery:

> "From the person of another" is not limited to taking from the body of the person wronged, but includes taking from his personal presence or personal protection.
>
> The victim's immediate or actual presence to the taking of the property is not required.

*Appellant's App*. 119-20. McDaniel does not argue that these instructions were an incorrect statement of the law; he claims that the instructions remove the burden of proof from the State "to demonstrate that property was taken from the person of, or the presence of" Nice, which is a factual determination that the jury must make. *Appellant's Br*. at 20. "The purpose of a jury instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Isom*, 31 N.E.3d at 484 (internal quotations omitted).

[21] The challenged instructions in the present case were a correct statement of the law and provided the jury with a full, correct statement of the law regarding the element of taking property from another person or from the presence of another person. The instructions helped fully define the taking element of robbery. Without such instructions, the jury would have been unsure if, under Indiana law, the taking element could apply to situations presented in the instant case, where the victim was unconscious for an unknown amount of time. Contrary to McDaniel's assertion, the challenged instructions did not constitute an improper mandatory presumption that relieved the State of its burden of persuasion.

[22]   McDaniel also contends that it was error for the trial court to use the language contained in the challenged instructions because it was improper to rely on language from a prior appellate opinion. While Indiana courts have stated, "[t]he mere fact that certain language or expression [is] used in the opinions of this Court to reach its final conclusion does not make it proper language for instructions to the jury," *Newbill v. State*, 884 N.E.2d 383, 393 (Ind. Ct. App. 2008), *trans. denied*, there is no blanket prohibition against the use of appellate decision language in jury instructions. *Munford v. State*, 923 N.E.2d 11, 15 (Ind. Ct. App. 2010). Therefore, the challenged instructions were not error, let alone fundamental error.

## III.   Sufficient Evidence

[23]   The deferential standard of review for sufficiency claims is well settled. When we review the sufficiency of evidence to support a conviction, we do not reweigh the evidence or assess the credibility of the witnesses. *Boggs v. State,* 928 N.E.2d 855, 864 (Ind. Ct. App. 2010), *trans. denied.* We consider only the evidence most favorable to the verdict and the reasonable inferences that can be drawn from this evidence. *Fuentes v. State,* 10 N.E.3d 68, 75 (Ind. Ct. App. 2014), *trans. denied.* We also consider conflicting evidence in the light most favorable to the trial court's ruling. *Oster v. State,* 992 N.E.2d 871, 875 (Ind. Ct. App. 2013), *trans. denied.* We will not disturb the jury's verdict if there is substantial evidence of probative value to support it. *Fuentes,* 10 N.E.3d at 75. We will affirm unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Lock v. State,* 971 N.E.2d 71, 74 (Ind.

2012). As the reviewing court, we respect "the jury's exclusive province to weigh conflicting evidence." *McHenry v. State,* 820 N.E.2d 124, 126 (Ind. 2005).

[24] McDaniel argues that the State failed to present sufficient evidence to support his conviction for robbery. In order to convict McDaniel of robbery as a Level 2 felony, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally took property from Nice or from the presence of Nice by using or threatening the use of force on any person or by putting Nice in fear, resulting in serious bodily injury to Nice. Ind. Code § 35-42-5-1. McDaniel concedes that the evidence at trial suggested that he entered Nice's residence then struck Nice on the head, rendering him unconscious and that the evidence was sufficient to prove that he took property from Nice's residence.

[25] McDaniel specifically, contends that insufficient evidence was presented to prove that property was taken by force from Nice or the presence of Nice. McDaniel asserts that, because Nice was unconscious for an undetermined amount of time, there was not sufficient evidence to support an inference that McDaniel used force to "accomplish the intent to remove property." *Appellant's Br.* at 26. Because there was not sufficient evidence presented to prove that he took Nice's property from Nice's person or Nice's presence, McDaniel claims that insufficient evidence existed to support his robbery conviction.

[26] Our Supreme Court has previously upheld a robbery conviction and held that property can be removed from someone's presence during a robbery even if the person was in a different room and not able to exercise control over the

property at the time it was taken. *Ortiz v. State*, 716 N.E.2d 345, 351-52 (Ind. 1999). In *Ortiz*, credit cards were taken from the victim's purse, which was located in another room, and the victim's car was taken from the garage. *Id.* at 351. The defendant argued that the victim was killed in her bedroom, most likely when she slept, and that the property was, therefore, not taken from the victim's person or presence. *Id.* The Court did not agree and held that the defendant's beating of the victim prevented her from retaining control over her property and that "a sufficiency challenge will not prevail merely because the taking of property and the use of force occurred in different rooms." *Id.* at 352.

[27] Here, the evidence presented at trial showed that McDaniel entered Nice's home and struck Nice on the head, rendering him unconscious. He then bound Nice's ankles, hands, face, neck, and head with duct tape and left Nice in a spare bedroom. McDaniel then took property from Nice's residence that included Nice's car, a jewelry box, jewelry, a television, a gold watch, a wallet, some tax papers, and Nice's dog. We conclude that sufficient evidence was presented to support McDaniel's conviction for robbery.

[28] Affirmed.

[29] Mathias, J., and Altice, J., concur.