## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 01 2017, 6:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Linda L. Harris
Kentland, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kurt Stuhlmacher,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | November 1, 2017<br><br>Court of Appeals Case No.<br>37A03-1704-CR-833<br><br>Appeal from the Jasper Superior Court<br><br>The Honorable James R. Ahler, Judge<br><br>Trial Court Cause No.<br>37D01-1411-F1-913 |

**Baker, Judge.**

[1] Kurt Stuhlmacher appeals his convictions for Level 1 Felony Attempted Murder,[1] Level 3 Felony Attempted Aggravated Battery,[2] two counts of Level 6 Felony Resisting Law Enforcement,[3] three counts of Level 6 Felony Criminal Recklessness,[4] and Class A Misdemeanor Operating a Vehicle While Intoxicated Endangering a Person.[5] Stuhlmacher raises the following arguments on appeal: (1) the trial court erroneously admitted certain evidence; (2) the trial court erroneously instructed the jury on the charge of attempted murder; and (3) he received the ineffective assistance of trial counsel. Finding no error and that Stuhlmacher did not receive the ineffective assistance of trial counsel, we affirm.

## Facts

[2] In November 2014, Stuhlmacher and Kelly Wood had been married for over thirty years.[6] Wood was employed, but Stuhlmacher was unemployed because of back injuries and disabilities. He was dependent on his wife for most things.

[3] On November 17, 2014, Wood went to work. Stuhlmacher called her at lunchtime and yelled at her and then sent her numerous texts until she left

---

[1] Ind. Code § 35-42-1-1.

[2] I.C. § 35-42-2-1.5.

[3] Ind. Code § 35-44.1-3-1.

[4] I.C. § 35-42-2-2.

[5] Ind. Code § 9-30-5-2.

[6] They have since divorced.

work. After she left work, Stuhlmacher called her again, angry because he had been prohibited from "deer camp" and believed it was her fault. Wood told him that she was not going to come home unless he agreed to seek substance abuse treatment. Stuhlmacher told Wood that if she did not come home, he would hunt her down.

[4] Stuhlmacher eventually agreed to seek substance abuse treatment, so Wood drove home. When she got there, Stuhlmacher was highly intoxicated and issued multiple conditions for seeking substance abuse treatment; she concluded that he had no intention of seeking such treatment. Eventually, Stuhlmacher became enraged, and Wood felt unsafe and decided to leave.

[5] Wood drove away in her Mustang; Stuhlmacher drove after her in his pickup truck at a high rate of speed. Wood was afraid and called 911. He chased her for several miles at high speeds, ramming her car three times. The third time he rammed her car, the Mustang hit a parked car and then crashed into a telephone pole. During the chase, Wood believed that Stuhlmacher was trying to kill her.

[6] After Wood called 911, several officers responded to the dispatch, and had unsuccessfully attempted to stop Stuhlmacher before he rammed Wood's car into the telephone pole. After that final crash, Stuhlmacher continued driving, leading officers on a chase through the streets of Rensselaer until officers were able to box in the pickup truck and arrest him.

On November 24, 2014, the State charged Stuhlmacher with Level 1 felony attempted murder and three counts of Level 6 felony resisting law enforcement. The State later added charges of three counts of Level 6 felony criminal recklessness, Class A misdemeanor operating a vehicle while intoxicated endangering a person, and Level 3 felony aggravated battery.[7] Stuhlmacher's jury trial began on October 25, 2016. Following the trial, the jury found him guilty of all charges except for one of the counts of Level 6 felony resisting law enforcement. On January 17, 2017, the trial court sentenced Stuhlmacher to an aggregate sentence of thirty years imprisonment.

On February 6, 2017, Stuhlmacher filed a motion to correct error; the trial court held a hearing on the motion on March 20, 2017. After denying the motion, the trial court engaged in a discussion with Stuhlmacher about the appointment of appellate counsel. During that discussion, Stuhlmacher made statements regarding an alleged incident in which an unauthorized person entered the jury room during deliberations and the judge followed her. The trial court vehemently denied that it had occurred. Stuhlmacher now appeals.

---

[7] The State also charged Stuhlmacher with Class C misdemeanor operating a vehicle with an ACE of .08 or more but later dismissed that charge.

# Discussion and Decision

## I. Admission of Evidence

[9] Stuhlmacher first argues that the trial court erroneously admitted certain evidence. The admission and exclusion of evidence falls within the trial court's sound discretion, and we will reverse only if the decision is clearly against the logic and effect of the facts and circumstances before it. *Johnson v. State*, 6 N.E.3d 491, 498 (Ind. Ct. App. 2014).

[10] Stuhlmacher contends that the trial court erroneously admitted two categories of evidence: (1) evidence regarding Stuhlmacher having been barred from hunting deer on a farmer's land where he and others of his family had hunted for years (the "deer camp" testimony); and (2) evidence regarding his tumultuous relationship with Wood. According to Stuhlmacher, the admission of this evidence violated Indiana Evidence Rule 404(b), which provides generally that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." The primary purpose of the rule is to protect the defendant from the forbidden inference that he acted badly in the past and therefore the present charged offense conforms to his past bad acts. *Erickson v. State*, 72 N.E.3d 965, 973-74 (Ind. Ct. App. 2017), *trans. denied*.

[11] The "deer camp" testimony can be summarized as follows: Stuhlmacher was told that he could no longer hunt deer on the land of a family friend. The farmer issued this prohibition because he feared liability based on

Stuhlmacher's mental health and prior suicide attempts. The facts that Stuhlmacher had mental health issues, had attempted suicide in the past, and was prohibited from hunting on the farmer's property, do not qualify as crimes, wrongs, or other bad acts evidence prohibited by Rule 404(b). Consequently, the trial court did not err by admitting this evidence.

[12] With respect to evidence regarding his tumultuous relationship with Wood, we note that evidence that would otherwise be excluded by Rule 404(b) may be admissible for another purpose, such as proving motive. Evid. R. 404(b)(2). It is well accepted that evidence regarding the relationship between the defendant and his victim, particularly where it demonstrates a hostile relationship, is relevant to motive and therefore generally admissible over a Rule 404(b) claim. *See, e.g.*, *Hicks v. State*, 690 N.E.2d 215, 222 (Ind. 1997) (holding that "hostility is a paradigmatic motive for committing a crime"); *Ross v. State*, 676 N.E.2d 339, 346 (Ind. 1996) (holding that a defendant's prior bad acts are generally admissible to show the relationship between the defendant and victim); *Whitham v. State*, 49 N.E.3d 162, 166-67 (Ind. Ct. App. 2016) (holding that defendant's prior acts against a spouse are admissible to show a hostile relationship and are relevant to defendant's motive and state of mind for the charged offense), *trans denied*.

[13] Here, the evidence revealed a lengthy and hostile relationship between Stuhlmacher and Wood. Their marriage was fraught with tension caused by substance abuse, mental illness, suicidal ideations, an imbalance of household and familial responsibilities, resentment, and anger management problems. We

find that the trial court did not err by admitting this evidence, which demonstrates a hostile relationship and is relevant to proving Stuhlmacher's motive in committing the charged offenses.

## II. Jury Instruction

[14] Stuhlmacher next argues that the trial court erred in instructing the jury on the offense of attempted murder. Instructing the jury is within the discretion of the trial court, and we will reverse only if a particular instruction is erroneous and the instructions as a whole misstate the law or otherwise mislead the jury. *Winkleman v. State*, 22 N.E.3d 844, 849 (Ind. Ct. App. 2014).

[15] To properly instruct a jury on an attempted murder charge, the instruction must state that the State is required to prove beyond a reasonable doubt that the defendant, with the specific intent to kill the victim, engaged in conduct that constituted a substantial step toward such a killing. *Rosales v. State*, 23 N.E.3d 8, 11 (Ind. 2015). Jury instructions on attempted murder charges that refer to a "knowing" or a "knowing or intentional" mens rea have generally been found to be erroneous. *E.g.*, *Ramsey v. State*, 723 N.E.2d 869, 872 (Ind. 2000); *Kadrovach v. State*, 61 N.E.3d 1241, 1243 n.2. (Ind. Ct. App. 2016), *trans denied*.

[16] Here, the final instruction on the attempted murder charge reads as follows:

> [T]he crime of the [sic] attempted murder is defined as follows: a person attempts to commit a murder when acting with the specific intent to kill another person, he engages in conduct that constitutes a substantial step towards the killing of that person.

Before you may convict the defendant of attempted murder, the State must prove each of the following elements beyond a reasonable doubt.

Number 1. The defendant,

2. Acting with a specific intent to kill Kelly [Wood],

3. Did knowingly and intentionally drive a Ford F -150 truck at a high rate of speed in excess of 90 miles per hour following Kelly Stuhlmacher in her Mustang and rammed her vehicle three separate times, the last incident causing her to lose control of the Mustang and crash into a utility pole.

[4.] Which was conduct constituting a substantial step towards the commission of the intended crime of killing Kelly Stuhlmacher. If the State []fails to prove each of these elements beyond a reasonable doubt, you must find the defendant not guilty of the crime of attempted [murder] a Level One Felony as charged in the amended count one.

Tr. Vol. III p. 92.

[17] At the outset, the instruction tells the jury that to convict Stuhlmacher of attempted murder, it must find that he acted with the specific intent to kill Wood. This is a correct recitation of the required mens rea. The confusion arises from the phrase in part three instructing the jury that it must find that Stuhlmacher "knowingly and intentionally" operated his truck in the manner specified. We agree with the State that this was "an inartful choice of wording because 'knowingly' should not have been included at all in this attempted murder instruction . . . ." Appellee's Br. p. 18. Nonetheless, here, the conjunction "and" was used between "knowingly" and "intentionally,"

meaning that the jury was not left with the choice to find Stuhlmacher guilty based only on a knowing mens rea. Instead, the jury had to find that an intentional mens rea was required. Under these circumstances, we find that the instruction as a whole did not mislead the jury with respect to the elements required for an attempted murder conviction.[8]

## III. Assistance of Trial Counsel

[18] Finally, Stuhlmacher argues that he received the ineffective assistance of trial counsel. To succeed on a claim of ineffective assistance of trial counsel, a defendant must establish both deficient performance on the part of trial counsel and that the deficient performance prejudiced the defendant. *Pavan v. State*, 64 N.E.3d 231, 233 (Ind. Ct. App. 2016).

[19] Here, Stuhlmacher contends that trial counsel was ineffective for failing to move for a mistrial regarding alleged extrajudicial contact with the jurors during deliberations. To prevail on a mistrial motion, a defendant must demonstrate that he was placed in a position of grave peril to which he should not have been subjected. *Bisard v. State*, 26 N.E.3d 1060, 1067-68 (Ind. Ct. App. 2015), *trans denied*. When a claim of extrajudicial contact or communications with the jury is made, a defendant has the initial burden of showing by a preponderance of the evidence that (1) extrajudicial contact occurred; and

---

[8] We do, however, encourage the trial court and counsel to omit the word "knowingly" from future attempted murder instructions.

(2) the contact pertained to the matter before the jury. *Wahl v. State*, 51 N.E.3d 113, 115 (Ind. 2016).

[20] In this case, the only portion of the record relating to Stuhlmacher's mistrial argument is the discussion between Stuhlmacher and the trial court following the hearing on his motion to correct error. They were talking about appointment of appellate counsel, and Stuhlmacher questioned whether a new attorney would be able to get up to speed on everything that happened at the trial, including matters outside the record:

| | |
|---|---|
| Stuhlmacher: | Um, now there will be some things that won't be . . . the person who was taking notes . . . for the court won't know about. Like . . . Jen Rusk going back in the jury room after they'd been picked to deliberate and then you going back there to get her out of there. That's not gonna be in the notes. |
| Trial court: | I would deny your statement that at any time during the trial I entered the jury room. That is simply— |
| Stuhlmacher: | You went back in— |
| Trial court: | —stop talking for a moment. That is simply not true. And I will not allow you to try to redirect the record into facts that will never appear, did not happen and simply are unwarranted so— |

\*\*\*

| Trial court: | Mr. Stuhlmacher . . . This is over. I'll appoint a public defender. . . . I'm not going to argue with you without a lawyer here representing you. I'm not gonna try to have you make a record of what you believe the facts are. . . . |
| --- | --- |

Tr. Vol. V p. 16-18.

[21] Stuhlmacher argues that, when this alleged incident occurred during the trial, his attorney should have requested a mistrial. But Stuhlmacher's own self-serving, after-the-fact statements, which were vehemently denied by the trial court, do not amount to sufficient evidence for us to glean what, if anything, actually occurred. We cannot discern who Jen Rusk is, when she allegedly entered the jury room, what was allegedly discussed when she entered, or what the trial court's involvement allegedly was. In other words, Stuhlmacher has not established that there was any extrajudicial contact with the jury at all. Under these circumstances, we cannot conclude that trial counsel was ineffective for failing to request a mistrial.[9]

[22] The judgment of the trial court is affirmed.

Bailey, J., and Altice, J., concur.

---

[9] Because Stuhlmacher raised an ineffective assistance of trial counsel claim on direct appeal, he is foreclosed from bringing an ineffective assistance of trial counsel claim in a future post-conviction proceeding. *Rogers v. State*, 897 N.E.2d 955, 965 (Ind. Ct. App. 2008).